

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-21-00036-CV
_____


CITY OF HOUSTON, Appellant

V.

JENNIFER CROOK, Appellee


_____

On Appeal from the 133rd District Court
Harris County, Texas
Trial Court No. 2019-74011
_____


Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Chief Justice Morriss

# MEMORANDUM OPINION

Jennifer Crook was injured when she lost control of her vehicle after running over a manhole on a city street in Houston.[1]  As a result, Crook sued the City of Houston (Houston) under the Texas Tort Claims Act (TTCA) alleging a waiver of sovereign immunity for claims involving personal injury caused by negligence resulting from an alleged premises defect and special defect.  Houston filed a motion for partial summary judgment on its plea to the jurisdiction regarding Crook's special defect allegation.[2]  Following a hearing, the trial court denied Houston's motion for partial summary judgment.  This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (Supp.).  Because Houston has proved its entitlement to partial summary judgment, we reverse the trial court's order and remand for further proceedings.

## *Background*

In her petition, Crook alleged that, on December 12, 2018, she was driving in the eastbound outside lane of North Braeswood Boulevard when a front, passenger-side tire of her car got stuck in an uncovered manhole, causing her car to spin out of control and hit a light pole. The impact injured Crook and totaled her car.  Crook further alleged that, at the time of the incident, there was ongoing construction parallel to the site of the manhole, making it easily

---

[1]Originally appealed to the First Court of Appeals in Houston, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001.  We follow the precedent of the First Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

[2]Houston has not challenged Crook's premises-defect claim.

2

discoverable by Houston. According to Crook, there were no visible warning signs that an uncovered manhole was ahead, resulting in a significant hazard to motorists.

In response, Houston alleged various things, including that, as a home-rule city, it was immune from liability under the TTCA. Houston thereafter filed a motion for partial summary judgment on its plea to the jurisdiction regarding Crook's special defect allegation,[3] challenging the court's subject-matter jurisdiction on the grounds of sovereign immunity. Houston's motion alleged that, as Crook was traveling east on North Braeswood heading toward West Loop 610 South, she drove over a utility (manhole) cover with the right front tire of her vehicle immediately before entering the intersection. Houston claimed that the utility cover was on top of the manhole and that Crook's front passenger tire flipped the utility cover up, causing her tire to strike the manhole. Houston agreed that Crook's vehicle then spun and ended up striking a freeway light pole on the opposite side of the intersection. Houston claimed that, based on these allegations—supported by summary judgment evidence—it was entitled to summary judgment as a matter of law, because a missing and/or unseated manhole cover is not a special defect, and it was therefore immune from being sued on this claim.

Houston's summary judgment evidence included:

- Crook's second amended response to Houston's first interrogatories in which Crook described the accident as follows:

> On December 12, 2018, Plaintiff was driving in the right lane on North Braeswood when she approached an uncovered manhole on the road which was designed, manufactured, maintained, controlled, installed, and/or operated by Defendant City of Houston. While in the right lane,

---

[3]In her amended petition, Crook also alleged a premises defect claim. The motion for partial summary judgment was not directed at that claim.

3

Plaintiff's front passenger tire got stuck in an uncovered manhole. As a result of the uncovered manhole, Plaintiff unavoidably lost control of her vehicle as it kept spinning, until it hit a light pole. The impact caused Plaintiff's airbags to deploy and resulted in her car being totaled. As a result of the accident, Plaintiff incurred severe injuries. At the time of the incident, there was ongoing construction parallel to the site of the manhole. The manhole could have easily been discovered by the City of Houston and/or workers on the construction site. Additionally, all drivers who were proceeding northbound on Braeswood road had no visible warning signs that an uncovered manhole [was] up ahead, which is clearly a significant hazard to Houston motorists. At the time the incident occurred, the uncovered manhole was under the control of the City of Houston or its agent. There were no signs of barricades warning commuters of the uncovered manhole at all time [sic] when this incident occurred.

- Photographs of the damage to Crook's vehicle.

- A photograph of the manhole following the accident showing that it was partially covered when the photograph was taken.

- The August 14, 2019, police report of the December 12, 2018, incident listing the accident address as "4900 N BRAESWOOD BLVD" at the intersection of 9288 West Loop South.

    The report lists the "crash time" as 8:00 and states the investigator's narrative opinion of what happened:

    "OPEN MAN HOLE COVER (FIXED OBJECT)"

    "UNIT # EASTBOUND ON N BRAESWOOD WHEN HIT MANHOLE COVER THAT WAS NOT SEATED IN HOLE FLIPED [sic] UP AND DAMAGED VEHICLE."

- The affidavit of Kathleen Korus, which stated, in pertinent part:

    I was a witness to an accident involving Jennifer Crook. Since this accident happened about a year ago, I do not remember all the details of the accident. I do remember some things. . . .

    On December 12, 2018, at approximately 8:00 a.m., I was driving in the left-hand lane traveling eastbound on North Braeswood Boulevard

4

(Braeswood), near the intersection with West Loop 610 West South . . . . In the lane to my right, I saw a black Mercedes Benz SUV which was traveling next to me on Braeswood. Suddenly, I saw the SUV spin and slam into the right-hand curb on Braeswood. The accident caught me by surprise; it appeared to me as if the SUV had hit a ghost car.

. . . .

In looking back at where we had been when the SUV started spinning out of control, I saw and realized that the manhole cover was not secure in the manhole and when the SUV tire drove over the manhole cover, the manhole cover popped or flipped up and off the top of the manhole.

- The unsworn declaration of Matthew J. Luke, which stated, in pertinent part:

On December 12, 2018, at approximately 8:00 a.m., I was driving eastbound on North Braeswood Boulevard (N. Braeswood) in morning traffic as we were approaching the intersection of the West Loop 610 South . . . . I saw that the light at the intersection was green for us and the day was clear.

I saw a black . . . SUV . . . traveling in front of me in the right-hand lane on N. Braeswood eastbound. I saw the SUV begin to enter the intersection of the feeder of West Loop 610 South when the SUV's front right tire dipped down into a manhole in the center of the lane, simultaneously as I saw the manhole cover flip up and from the manhole. I then saw the driver of the SUV lose control of the SUV, watching it spin and pull to the right up onto the curb on the other side of the intersection and struck a freeway light pole.

. . . .

Even though I saw the accident, I am not sure if the problem was that the manhole cover was not was [sic] adjusted correctly inside the manhole cover rim or that it was not properly laid on top of the manhole itself.

In response to Houston's motion for partial summary judgment, Crook claimed that Houston had actual and constructive knowledge about "the defective manhole cover" and that the condition that caused the accident was a special defect as the manhole was uncovered at the

time of the accident.  Alternatively, it argued that a jury must decide any dispute regarding the question of whether the manhole was partially uncovered or fully uncovered.

Crook's summary judgment evidence included:

- A work order dated December 7, 2018, regarding replacement of a storm drain manhole cover at "4700 N BRAESWOOD BLVD & 9200 W LOOP FWY S."  The work order type was listed as "Manhole Cover Missing."  The intake comments simply stated, "Open manhole."  The work order indicated that the cover was replaced within hours of the report that generated the work order.

- A December 12, 2018, report made at 6:53 a.m. memorializing a complaint of "ROW - Manhole - Missing Cover ROW" at "4690 N BRAESWOOD BLVD & W LOOP FWY S, 77096."  The intake comments state, "[M]anhole shifted, please assist."  The report was referred for further investigation and stated that the "Location ha[d] been referred to maintenance section on work order #13298254."

- A December 12, 2018, work order with work order comments stating "ROW – Manhole - Missing Cover ROW" at "4690 N BRAESWOOD BLVD & W LOOP FWY S., TX[]77096."  Intake comments state, "[M]anhole shifted, please assist."  Comments by a worker who investigated at 10:02 a.m. stated, "The casting to Storm manhole #1861195 needs repairs to prevent this manhole from shifting.  Appears to be a newer manhole cover but continues to shift as vehicles drive over it.  It's on the eastbound side of N Braeswood Blvd at the I-610 S Intersection."  Further comments indicate that the matter was referred to the Texas Department of Transportation.

- The police report of the December 12, 2018, accident, as detailed above.

- The affidavit of Jennifer Crook, which stated, in pertinent part, that "[i]mmediately after the accident, the manhole cover was completely off of the manhole and ended up on the left side of the manhole."  Crook also verified that the photographs attached as summary judgment evidence were taken by her daughter immediately after the accident.  After Crook's daughter "took photographs of the accident, Officer T. Adams moved the manhole cover back on the manhole and placed barriers, in an effort to protect other drivers."

- Photographs taken immediately after the accident showing that the manhole cover was off the manhole.

6

- A photograph of the manhole following the accident showing that it was partially covered when the photograph was taken.

- Photographs of the damage to Crook's vehicle.

At the conclusion of a hearing on Houston's motion, the trial court denied the motion for partial summary judgment, after which it entered a signed order. Neither the trial court's oral ruling nor its signed order indicated the basis of its denial.

### Standard of Review

"A plea to the jurisdiction based on governmental immunity is a challenge to the trial court's subject[-]matter jurisdiction." *City of League City v. LeBlanc*, 467 S.W.3d 616, 619 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *City of Waco v. Kirwan*, 298 S.W.3d 618, 621 (Tex. 2009)). "[S]ubject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). When the absence of subject-matter jurisdiction is raised by a motion for summary judgment, "[w]e construe the order denying the motion for summary judgment as an order denying the plea to the jurisdiction." *UT Health Sci. Ctr.-Houston v. Perkins*, No. 01-16-00901-CV, 2017 WL 2774487, at *4 (Tex. App.—Houston [1st Dist.] June 27, 2017, no pet.) (mem. op.) (citing *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006)); *see Bland*, 34 S.W.3d at 554. "We review a trial court's ruling on subject-matter jurisdiction de novo." *Perkins*, 2017 WL 2774487, at *4 (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

"When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, we 'consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised,' even where those facts may implicate the merits of the cause of

7

action." *LeBlanc*, 467 S.W.3d at 619 (quoting *Kirwan*, 298 S.W.3d at 622 (quoting *Miranda*, 133 S.W.3d at 227)).  When "the jurisdictional challenge implicates the merits of the plaintiffs' cause of action and the plea to the jurisdiction includes evidence," as in this case, "the trial court reviews the relevant evidence to determine if a fact issue exists." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004).  "[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228.  When, however, "the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact[-]finder." *Id.* 227–28.  "[A]fter the state asserts and supports with evidence that the trial court lacks subject[-]matter jurisdiction, we simply require the plaintiffs, when the facts underlying the merits and subject[-]matter jurisdiction are intertwined, to show that there is a disputed material fact regarding the jurisdictional issue." *Id.* at 228 (citing *Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 420 (Tex. 2000); *Phan Son Van v. Pena*, 990 S.W.2d 751, 753 (Tex. 1999)).

### Texas Tort Claims Act

"Under the TTCA, the government waives immunity from suit to the extent of liability under the Act." *LeBlanc*, 467 S.W.3d at 620–21.  The TTCA provides that a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).  When a "claim arises from a premises defect, the governmental unit owes to the claimant only the duty that a

8

private person owes to a licensee on private property, unless the clamant pays for the use of the premises." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a). When a premises-liability claim involves a "special defect," rather than a premises defect, the TTCA imposes on the governmental unit the duty owed to an invitee. *LeBlanc*, 467 S.W.3d at 620 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b)). So, although "[b]oth an ordinary premises defect and a special defect can, and often do, constitute dangerous conditions[,] the legal distinction between the two defects lies in the duty owed to the person injured as a result of the defect." *Smith v. City of Houston*, No. 01-03-00519-CV, 2005 WL 22953, at *2 (Tex. App.—Houston [1st Dist.] Jan. 6, 2005, no pet.) (mem. op.) (citing *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g)). "Whether a premises defect is special or ordinary is usually a question of law." *LeBlanc*, 467 S.W.3d at 620 (citing *Reyes v. City of Laredo*, 335 S.W.3d 605, 607 (Tex. 2010) (per curiam)).

### *The Manhole Cover Did Not Present a Special Defect*

The TTCA states that "special defects" include "excavations or obstructions on highways, roads, or streets." TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b). "The Texas Supreme Court has construed special defects to include other defects of the same kind or class as the two expressly mentioned in the statute." *LeBlanc*, 467 S.W.3d at 620 (citing *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam)). "[T]o be considered a special defect, the defect must be of the same kind or class as excavations or obstructions on a highway, road, or street." *Madern v. City of Pasadena*, No. 01-05-00337-CV, 2006 WL 560183, at *2 (Tex. App.—Houston [1st Dist.] Mar. 9, 2006, pet. denied) (mem. op.) (citing *City of Grapevine*

9

*v. Roberts*, 946 S.W.2d 841, 843 (Tex. 1997) (per curiam)). Because a "special defect is distinguished by some unusual quality outside the ordinary course of events . . . [a] longstanding, routine, or permanent condition is . . . not a special defect. *Id.* (footnote omitted) (citations omitted) (citing *Harris Cty. v. Estate of Ciccia*, 125 S.W.3d 749, 753–54 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Stokes v. City of San Antonio*, 945 S.W.2d 324, 326 (Tex. App.—San Antonio 1997, no writ)). Although we find support in the caselaw for the proposition that an uncovered or open manhole is a special defect, we find no support for the proposition that a partially covered manhole or improperly seated manhole cover constitutes such a defect.

In *Harris County v. Smoker*, 934 S.W.2d 714 (Tex. App.—Houston [1st Dist.] 1996, pet. denied), our sister court addressed a similar issue. In that case, a pedestrian sued Harris County after having been injured by falling into an uncovered storm sewer. *Id.* at 716. In holding that the trial court did not err by refusing to instruct the jury on premises defect, the court found that "the uncovered storm sewer located where a pedestrian would normally walk on a street without a sidewalk and in the absence of streetlights, constituted a special defect." *Id.* at 719.

Other courts have reached similar conclusions. For example, in *City of Austin v. Rangel*, 184 S.W.3d 377 (Tex. App.—Austin 2006, no pet.), a pedestrian sued the City of Austin after she was injured on a public sidewalk by stepping into an uncovered water meter box. *Id.* at 380. The pedestrian was directed to the sidewalk by a uniformed police officer, did not see any warning signs in the area, and failed to notice the hole. *Id.* The court concluded that the uncovered water-meter box was a special defect, reasoning that:

> A normal user of the roadway in this situation would be a pedestrian on the
> sidewalk, as Rangel was at the time she stepped into the open meter box. An

10

> average pedestrian would not expect to encounter a hole of this size on a downtown public sidewalk. Consequently, we hold that the uncovered meter box was a special defect of the kind and class covered by the Act and that it posed an unexpected and unusual danger to ordinary users of the sidewalk.

*Id.* at 384 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(b); *Payne*, 838 S.W.2d at 238)

Similarly, *City of Houston v. Kiju Joh*, 359 S.W.3d 895 (Tex. App.—Houston [14th Dist.] 2012, no pet.), involved an injured pedestrian who stepped into an uncovered utility hole while in the pedestrian crosswalk. Joh sued the City of Houston, claiming that the uncovered utility hole constituted a special defect under the TTCA for which the City's governmental immunity had been waived. *Id.* at 897. The city did not dispute that Joh "alleged all elements of a claim regarding a special defect for which a waiver of immunity exists." *Id.* at 898–99. The city claimed, though, that Joh's subjective knowledge of the defect removed her claim from the arena of special defects. The court disagreed, concluding that the "ordinary user" is the proper objective standard. *Id.* at 899 (citing *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 847 (Tex. 2009) (per curiam)). Because the City's only argument on appeal for reversing the trial court's ruling on its plea to the jurisdiction was based on the pedestrian's subjective knowledge, the court overruled the City's issue. *Id.* at 901.

Unlike the uncovered holes discussed in the foregoing cases, covered or improperly covered manholes, or improperly seated manhole covers and sewer grates, have been held not to fall within the narrow class of special defects contemplated by Section 101.022(b) of the Texas Civil Practice & Remedies Code. In *Madern*, for example, a pedestrian stepped onto a manhole cover, which slipped and caused his right leg to fall into the manhole, injuring him. *Madern*, 2006 WL 560183, at *1. Madern maintained, among other things, that the broken support ring of

11

the manhole was like an excavation in reliance on *Harris County v. Smoker*. *Id.* at *3. The court distinguished *Smoker* because, in *Madern*, "the manhole was more than five feet from the roadway and was in its permanent, covered condition. In contrast, the storm sewer in *Smoker* was extended one and one-half to two feet into the street, and the absence of a storm cover was a temporary condition." *Id.* The court recognized that, because "[t]he manhole here was covered and was, therefore, a permanent condition," it was not a special defect. *Id.* (citing *Mitchell v. City of Dallas*, 855 S.W.2d 741, 748 (Tex. App.—Dallas 1993), *aff'd*, 870 S.W.2d 21 (Tex. 1994) ("longstanding, routine, or permanent condition is not a special defect").

Likewise, in *LeBlanc*, our sister court held that a storm sewer covered with a grate rather than a solid cover did not constitute a special defect. *LeBlanc*, 467 S.W.3d at 622. In that case, LeBlanc stepped onto a storm sewer covered with iron grid bars spaced in such a way that a person could step into the hole, as she did. *Id.* at 619. In reliance on *Smoker*, LeBlanc claimed that this condition was a special defect for which immunity was waived. *Id.* at 621. The court distinguished *Smoker* on several bases, but concluded that, in *Smoker*, "[t]he absence of the sewer cover was . . . not a longstanding or permanent condition[.]" *Id.* at 622 (alterations in original) (quoting *Smoker*, 934 S.W.2d at 719). In *LeBlanc*, the court recognized that in that case, "there never was a sewer cover—it was designed to have a grate rather than a solid cover. A longstanding, routine, or permanent condition is not a special defect." *Id.* (citing *Mitchell*, 855 S.W.2d at 748). Because of the permanency of its condition, the court determined that the grate-covered storm sewer was not a special defect. *Id.*

12

More recently, in *City of Lancaster v. LaFlore*, No. 05-17-01443-CV, 2018 WL 4907843, at \*5 (Tex. App.—Dallas Oct. 10, 2018, no pet.) (mem. op.), the court determined that a partially dislodged manhole cover was not a special defect.  LaFlore alleged that, as he drove on a public street, he ran over a manhole with a partially dislodged cover, lost control of his car, and hit a tree.  *Id.* at \*1.  The Dallas Court of Appeals stated, in *LaFlore*,

> There are "several helpful characteristics" in "determining whether a particular condition is like an excavation or obstruction and therefore a special defect," including:
>
> > (1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected and unusual danger.

*Id.* at \*3–4 (quoting *City of Denton v. Paper*, 376 S.W.3d 762, 765 (Tex. 2012) (per curiam)).

Based on these factors, the court determined that "the partially dislodged manhole cover [was] not of the same class as an excavation or obstruction."  *Id.* at \*5 (citing *City of Denton v. Paper*, 376 S.W.3d 762, 764 (Tex. 2012) (per curiam)[4] ("The class of special defects contemplated by the statute is narrow.") (quoting *The Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 116 (Tex. 2010) (per curiam)))).  The Dallas Court relied on "the supreme court's clear direction to construe the [TTCA] narrowly . . . to hold that the manhole cover was not a special defect" because it was not of the same class as an excavation or obstruction, was of limited size, and straddled the center lane of the roadway.  *Id.* at \*5–6 (quoting *City of Arlington*

[4]In *Paper*, a bicyclist was injured when her bicycle's front wheel ran over a depression in the roadway causing her to land on her chin and break several teeth.  The court noted that the sunken area was two inches deep or more at its deepest point and that "ample room existed for a bicycle to navigate around this hole without having to enter the opposing traffic lane."  *Paper*, 376 S.W.3d at 765.

13

*v. S.C.*, No. 02-17-00002-CV, 2017 WL 3910992, at \*5 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.) (concluding that improperly sized manhole cover that injured pedestrian when it rotated and caused her to fall was not a special defect and collecting cases involving defectively covered holes)).

The facts here line up with those in *Leflore*, and we agree with that court's reasoning. Further, the Houston First Court has determined that a grate-covered manhole and a manhole with a broken support ring are not special defects, *see LeBlanc*, 467 S.W.3d at 622; *Madern*, 2006 WL 560183, at \*3, but that an uncovered storm sewer located where a pedestrian would normally walk on a street without a sidewalk and in the absence of streetlights was a special defect, *Smoker*, 934 S.W.2d at 719. We must therefore decide whether, as Crook claims, she has raised a genuine issue of material fact on the question of whether the manhole was uncovered.

The summary judgment evidence submitted by Houston included Luke's sworn declaration. Luke testified that he saw Crook's right front tire dip down into a manhole in the center lane and that, at the same time, he saw the manhole cover flip up from the manhole. The fact that Luke was unsure whether the manhole cover was not adjusted correctly inside the rim or whether it was improperly seated on top of the manhole is of no consequence to the issue of whether the manhole was uncovered when Crook struck it.

A second witness, Korus, testified that the manhole cover popped or flipped up off the top of the manhole when the sports utility vehicle's tire rolled over the cover. The investigating officer at the scene did not have the benefit of interviewing those witnesses. His report was based on speaking with Crook, who stated that "something struck her vehicle" as she was driving

14

down Braeswood. The police report indicates that Crook was eastbound on North Braeswood when she hit a manhole cover that was not seated in the hole and flipped up and damaged her vehicle. The officer's diagram of the accident scene indicates that the manhole was in the center of the eastbound lane of North Braeswood, where Crook was traveling.

While Houston's summary judgment evidence shows that the manhole cover was either dislodged or unseated at the time Crook struck it, Crook's summary judgment evidence fails to raise a genuine issue of material fact on her claim that she drove over an open manhole. Crook's summary judgment evidence includes three photographs of the manhole taken after the accident. One photograph depicts a partially open manhole cover at the accident scene. The other two photographs depict an open manhole with the cover closely adjacent to the hole. Although Crook testified that her daughter took the photographs immediately after the accident, the photographs are not evidence of the condition of the manhole immediately before the accident. In her affidavit, Crook did not claim that the manhole was open immediately before the accident. Instead, she stated, "Immediately after the accident, the manhole cover was completely off of the manhole and ended up on the left side of the manhole." Crook's affidavit and the attached photographs fail to raise a genuine fact issue regarding the condition of the manhole before the accident.[5]

---

[5]Although Houston's motion for summary judgment attached as evidence Crook's second amended response to Houston's first interrogatories in which Crook states, "Plaintiff's front passenger tire got stuck in an uncovered manhole," we cannot consider this evidence in our determination of whether Crook raised a genuine fact issue regarding whether the manhole was uncovered. *See Hoffman v. Mena*, No. 03-19-00409-CV, 2021 WL 2460637, at *5 (Tex. App.—Austin June 17, 2021, no pet.) (mem. op.) ("A party may not rely on its own interrogatory responses to raise a fact issue in order to defeat summary judgment, even if the other party puts them into evidence.") (quoting *Zarzosa v. Flynn*, 266 S.W.3d 614, 619 (Tex. App.—El Paso 2008, no pet.)); *Garcia v. Nat'l Eligibility Express, Inc.*, 4 S.W.3d 887, 891 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (responding party may not rely on own

15

The work orders Crook attached to her motion—assuming they refer to the manhole at issue here—likewise do not raise such a fact issue.[6]  Although the December 7 work order indicates that the manhole cover was missing, the order also indicates that the cover was replaced within hours of the reported open manhole.  The second work order was dated just before 7:00 a.m. on the accident date.  It indicates "ROW - Manhole - Missing Cover."  The intake comments listed on the same report at the same time reflect that assistance was needed because the "manhole [had] shifted."  A worker who investigated the situation at 10:02 that same morning indicated that the casting to the manhole needed to be repaired to keep the manhole cover from shifting.  This evidence does not indicate that the manhole at issue was open before Crook's accident at approximately 8:00 a.m.  *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam).[7]

Because we believe—based on our previous analysis—that our sister court would conclude that a partially dislodged or unseated manhole cover is not a special defect under the facts of this case, and because we conclude there is no fact question regarding the issue of whether the manhole was open at the time of the accident, the trial court erred in denying the

---

interrogatory answers to show fact issue); *see also* TEX. R. CIV. P. 197.3 ("Answers to interrogatories may be used only against the responding party.").

[6]The accident report lists the accident as having occurred at the intersection of 4900 North Braeswood and 9288 West Loop South.  The December 7 work order lists the "problem address" as "4700 N BRAESWOOD BLVD & 9200 W LOOP FWY S."  The December 12 work order lists the "problem address" as "4690 N BRAESWOOD BLVD & W LOOP FWY S."

[7]"The evidence raises a genuine issue of fact if reasonable and fair-minded jurors could differ in their conclusions in light of all of the summary-judgment evidence."  *Davis v. Texas Farm Bureau Insurance*, 470 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Goodyear Tire & Rubber Co.*, 236 S.W.3d at 755).

plea to the jurisdiction.[8] *See LeBlanc*, 467 S.W.3d at 622; *Madern*, 2006 WL 560183, at \*3; *Brazoria Cty. v. Colquitt*, 226 S.W.3d 551, 554 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (if relevant evidence is undisputed or fails to raise a fact question on jurisdictional issue, trial court rules on plea to jurisdiction as matter of law).[9]

We reverse the trial court's order and remand for further proceedings consistent with this opinion.

Josh R. Morriss, III
Chief Justice

Date Submitted:     September 21, 2021
Date Decided:      October 15, 2021

---

[8]In concluding that a partially dislodged or unseated manhole cover is not a special defect in this particular case, we do not decide the question of whether an open manhole is a special defect.

[9]Houston argues that even if a dislodged manhole cover were a special defect, it had no duty to warn because it had no reason to know of the condition. Based on our disposition, we need not address this argument.