

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00150-CV

**CITY OF UVALDE**,
Appellant

v.

Alyssa **PARGAS**,
Appellee

From the 38th Judicial District Court, Uvalde County, Texas
Trial Court No. 2022-05-34356-CV
Honorable Dennis Powell, Judge Presiding

Opinion by:  Beth Watkins, Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: October 25, 2023

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

The City of Uvalde appeals the trial court's order denying its plea to the jurisdiction on appellee Alyssa Pargas's premises liability claims. We reverse the trial court's order as to Pargas's ordinary premises defect claim and render judgment dismissing that claim. We affirm the trial court's order as to Pargas's special defect claim.

### BACKGROUND

On August 9, 2021, Pargas fell in a hole and fractured her ankle while she was walking near FM 1435 in Uvalde, Texas. The City contends FM 1435 is a state highway maintained by the

State of Texas. It is undisputed that City employees filled the hole, which was approximately three feet deep, two days after Pargas's injury.

Pargas sued the City and the Texas Department of Transportation for her injuries. She alleged the land where she fell was "owned, maintained, and/or overseen" by both the City and TxDOT. She also alleged the hole was a "special defect" in close proximity to the roadway that "impair[ed] normal use of the area by ordinary users and pos[ed] an unexpected and unusual danger to the public." Pargas alternatively alleged the hole was an ordinary premises defect.

The City filed a plea to the jurisdiction arguing that Pargas had not alleged facts sufficient to establish a waiver of the City's governmental immunity. Specifically, the City argued: (1) it did not owe a legal duty to Pargas because it did not own, control, or maintain the premises where she fell; (2) the hole was not a special defect because it was not located in the roadway; (3) Pargas's ordinary premises defect claim lacked merit because the City did not have actual knowledge of the dangerous condition prior to Pargas's injury; and (4) the City's decision to fill the hole after Pargas's fall was a discretionary act for which it retained immunity. As support for its plea, the City presented a "Municipal Maintenance Agreement" between the City and the State that "provide[d] for State participation in the maintenance of" state highways within the City, including FM 1435. The City also presented affidavits from two of its employees, Larissa V. Rodriguez and Juan Zamora Jr., who averred that the City did not receive notice of the hole prior to Pargas's fall. Zamora further averred that the City filled in the hole "for public safety."

Pargas filed a response to the City's plea to the jurisdiction. As support for her response, she attached the same Municipal Maintenance Agreement the City had already presented. She also presented two photographs showing the size and location of the hole as it appeared before the City filled it.

On February 9, 2023, the trial court held a hearing on the City's plea. Although TxDOT was not a party to the plea, its attorney attended the hearing and told the trial court that "ownership [of FM 1435] would fall with the State." TxDOT's counsel further represented that she "believe[d] that [the hole] was in our right-of-way." However, she stopped short of agreeing to judicially admit those issues.

After hearing the parties' arguments, the trial court signed an order denying the City's plea to the jurisdiction. The City then filed this interlocutory appeal.[1]

## ANALYSIS

### *Standard of Review*

A plea to the jurisdiction is a dilatory plea that defeats a cause of action without regard for the merits of the claims. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "[W]e review a trial court's ruling on a plea to the jurisdiction de novo." *Hous. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016).

When a plea to the jurisdiction challenges the pleadings, we must determine "if the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case[.]" *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018). "We construe the pleadings liberally in favor of the plaintiffs and look to the pleaders' intent." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

When a plea to the jurisdiction challenges the existence of jurisdictional facts, our review mirrors that of a traditional summary judgment. *Christ v. Tex. Dep't of Transp.*, 664 S.W.3d 82, 89 (Tex. 2023). Where the jurisdictional issue implicates the merits of the parties' claims, "we consider relevant evidence submitted by the parties to determine if a fact issue exists." *Suarez v.*

---

[1] While TxDOT is a defendant below, it is not a party to this appeal.

*City of Tex. City*, 465 S.W.3d 623, 632–33 (Tex. 2015). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Id.* at 633. If the evidence is undisputed or does not raise a fact question, "the trial court rules on the plea as a matter of law." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). However, if the evidence raises a fact question on the jurisdictional issue, "then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227–28. "By requiring the [governmental entity] to meet the summary judgment standard of proof in cases like this one, we protect the plaintiffs from having to 'put on their case simply to establish jurisdiction.'" *Id.* (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 554).

### Applicable Law—Governmental Immunity and Premises Liability in General

The City is a political subdivision of the State that is generally immune from liability and suit unless the legislature has expressly waived immunity by statute. *See City of Houston v. Hous. Mun. Emps. Pension Sys.*, 549 S.W.3d 566, 575 (Tex. 2018); *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011). The legislature has waived governmental units' immunity for injuries arising from a condition or use of real property where "the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

Texas law recognizes two distinct types of premises liability claims against a governmental entity: ordinary premises defects and special defects. TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a), (b); *City of San Antonio v. Tex. Mut. Ins. Co.*, No. 04-07-00837-CV, 2009 WL 89700, at *1 (Tex. App.—San Antonio Jan. 14, 2009, no pet.) (mem. op.). In an ordinary premises defect claim, "the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." TEX. CIV.

PRAC. & REM. CODE § 101.022(a). Under this duty, the owner or possessor of property may only be held liable for injuries caused by its failure to use ordinary care to protect against unreasonably dangerous conditions of which it had actual knowledge. *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992) (op. on reh'g). However, this "limitation of duty . . . does not apply to the duty to warn of special defects such as excavations or obstructions on highways, roads, or streets[.]" TEX. CIV. PRAC. & REM. CODE § 101.022(b). In a special defect case, the owner or possessor of property is held to an "invitee" standard of care—i.e., it owes a legal duty to use ordinary care to reduce or eliminate risks posed by unreasonably dangerous conditions of which it was or reasonably should have been aware. *See, e.g.*, *Payne*, 838 S.W.2d at 237; *City of San Antonio*, 2009 WL 89700, at *2.

### *Application*

#### *Ownership and Control*

For both an ordinary premises defect claim and a special defect claim, the plaintiff must establish as a threshold matter that the defendant governmental entity owned, occupied, or controlled the premises. *See, e.g.*, *City of Fort Worth v. Alvarez*, No. 02-20-00408-CV, 2022 WL 405897, at *3 (Tex. App.—Fort Worth Feb. 10, 2022, no pet.) (mem. op.). In its first issue, the City argues there is no evidence to show that it owned the premises where Pargas fell. In its second issue, it argues Pargas did not present any evidence that it controlled the premises.

"[A] premises-liability defendant may be held liable for a dangerous condition on the property if it 'assum[ed] control over and responsibility for the premises,' even if it did not own or physically occupy the property." *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002) (quoting *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986)). "The control must relate to the condition or activity that caused the injury." *Cohen v. Landry's, Inc.*, 442 S.W.3d 818, 824 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "The relevant inquiry is whether the

defendant assumed sufficient control over the part of the premises that presented the alleged danger so that the defendant had the responsibility to remedy it." *Brown*, 80 S.W.3d at 556. A plaintiff may establish the governmental entity's control of the premises by presenting evidence of "either a contractual agreement expressly assigning the right of control or an actual exercise of control." *Cohen*, 442 S.W.3d at 824.

As the City notes, the Municipal Maintenance Agreement provided that the State bore the responsibility to "maintain the shoulders [of certain named roads, including FM 1435] on those sections where there is no curb and gutter." The evidence showed that there was no curb or gutter in the relevant portion of FM 1435. However, the agreement also explicitly provided that the City—not the State—retained the responsibility to:

> Require installations, repairs, removals, or adjustments of publicly or privately owned utilities or services to be performed in accordance with State Highway Department specifications and subject to approval of the State.

Pargas alleged—and the City has not disputed—that the hole in which she fell was created by the removal of a utility pole. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009) (in reviewing a plea to the jurisdiction, we construe the pleadings liberally in favor of the plaintiff). This allegation, if true, would show the City was contractually obligated to ensure the removal of the pole was "performed in accordance with" certain specifications. The trial court therefore did not err by concluding that the pleadings and evidence presented below, when viewed in the light most favorable to Pargas, would allow a rational factfinder to determine that the City contractually retained at least some control over the condition that allegedly caused Pargas's injury. *See Cohen*, 442 S.W.3d at 824.

Moreover, regardless of how the hole came into existence, the City actually exercised control over the premises by filling the hole after Pargas fell.[2] *See id.* As the trial court noted during the plea to the jurisdiction hearing, the fact that the City entered the property to remedy the defect is some evidence that it believed it had authority to do so.[3] *See Brown*, 80 S.W.3d at 556. The trial court did not err by concluding the City's voluntary repair of the hole was more than a scintilla of evidence of its control over the premises. *See Cohen*, 442 S.W.3d at 824–25 (evidence showing defendant "on its own initiative, solicited a bid and possibly undertook to repair the sidewalk after [plaintiff] was injured" was "more than a scintilla of evidence of [defendant's] control over the sidewalk"); *see also Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324–25 (Tex. 1993) (lessee's construction of ramp "[o]n its own initiative and at its own expense" was sufficient evidence of control to support finding that lessee owed legal duty to plaintiff). While we agree with the City that subsequent remedial measures are not admissible to prove the City's alleged negligence, such measures are admissible to show control. TEX. R. EVID. 407(a).

When viewed in the light most favorable to Pargas, the evidence is sufficient to raise a fact question about whether the City "assum[ed] control over and responsibility for" the premises where Pargas was injured, "even if it did not own or physically occupy the property." *Brown*, 80 S.W.3d at 556 (internal quotation marks omitted); *Cohen*, 442 S.W.3d at 824. We therefore overrule the City's second issue. Based on our resolution of this issue, we need not decide the City's first issue regarding ownership of the premises. TEX. R. APP. P. 47.1; *see Brown*, 80 S.W.3d at 556.

---

[2] The City argued below, and continues to argue on appeal, that it had the discretionary authority to fill in the hole. This appears to conflict with the City's assertion that it lacked any control at all over the premises.

[3] The City asserts that a finding of control under these facts would also support a finding of control against "a good Samaritan removing hazards such as picking up a banana peel from a walkway or picking up trash from a roadway." We do not agree that removing a stray piece of litter shows the same level of control as filling a three-foot hole.

*Premises Liability*

In its third issue, the City argues it is immune from Pargas's ordinary premises defect claim because she did not establish the City's actual knowledge of the dangerous condition. It also contends it is immune from her special defect claim because the hole was not a special defect as a matter of law.

### A.     Ordinary Premises Defect

An ordinary premises defect claim requires the claimant to show, inter alia, that the owner or possessor of the property had actual knowledge of the dangerous condition at the time of the accident. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(a); *Brown*, 80 S.W.3d at 554–55; *Payne*, 838 S.W.2d at 237. Where, as here, the defendant is a governmental entity, this showing is part of the plaintiff's burden to establish a waiver of governmental immunity. *See City of Corsicana v. Stewart*, 249 S.W.3d 412, 413–14 (Tex. 2008) (per curiam); *City of Dallas v. Thompson*, 210 S.W.3d 601, 602–03 (Tex. 2006) (per curiam).

Pargas argued below that the City should have been aware of the hole for various reasons. However, she did not present any evidence to contradict the City's evidence that it lacked actual notice of the hole before her injury. *See City of Denton v. Paper*, 376 S.W.3d 762, 767 (Tex. 2012) (per curiam); *Stewart*, 249 S.W.3d at 415–16. Accordingly, she did not establish a waiver of the City's immunity for an ordinary premises defect claim. *See Stewart*, 249 S.W.3d at 416; *Thompson*, 210 S.W.3d at 603–04. We therefore sustain the City's third issue as to Pargas's ordinary premises defect claim. We reverse the trial court's order denying the City's plea to the jurisdiction as to Pargas's ordinary premises defect claim and render judgment dismissing that claim.

B.      Special Defect

   *1.      Special defect law in general*

A special defect is a condition "of the same kind or class as excavations or obstructions on highways, roads, or streets . . . that present an unexpected and unusual danger to ordinary users of roadways[.]" *City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam) (internal quotation marks and citation omitted); *see also* TEX. CIV. PRAC. & REM. CODE § 101.022(b). "The class of special defects contemplated by the statute is narrow." *Paper*, 376 S.W.3d at 766.

To be a special defect, the dangerous condition need not be located on the roadway itself. *See Payne*, 838 S.W.2d at 238 n.3; *City of Austin v. Rangel*, 184 S.W.3d 377, 383 (Tex. App.—Austin 2006, no pet.). However, "it must be close enough to present a threat to normal users of the road." *Ybarra v. County of Hidalgo*, 362 S.W.3d 129, 133 (Tex. App.—San Antonio 2011, no pet.) (internal quotation marks omitted). For special defect purposes, a pedestrian may be a normal user of the roadway. *See City of Houston v. Breckenridge*, No. 14-21-00086-CV, 2022 WL 4103202, at *7 (Tex. App.—Houston [14th Dist.] Sept. 8, 2022, pet. denied) (mem. op.); *Rangel*, 184 S.W.3d at 384; *City of El Paso v. Chacon*, 148 S.W.3d 417, 423 (Tex. App.—El Paso 2004, pet. denied); *Harris County v. Smoker*, 934 S.W.2d 714, 719 (Tex. App.—Houston [1st Dist.] 1996, writ denied). "[A]chieving ordinary-user status requires that someone be on or in close proximity to a roadway, doing the normal things that one might expect to do on or near a roadway, whether in some sort of vehicle or on foot." *City of Arlington v. S.C.*, No. 02-17-00002-CV, 2017 WL 3910992, at *4 (Tex. App.—Fort Worth Sept. 7, 2017, no pet.) (mem. op.). In determining whether a condition is a special defect, Texas courts consider "several helpful characteristics, such as: (1) the size of the condition; (2) whether the condition unexpectedly and physically impairs an ordinary user's ability to travel on the road; (3) whether the condition presents some unusual

quality apart from the ordinary course of events; and (4) whether the condition presents an unexpected and unusual danger." *Paper*, 376 S.W.3d at 765.

Unlike a plaintiff who asserts an ordinary premises defect, a special defect claimant is not required to show that the governmental entity had actual knowledge of the dangerous condition. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(b). Instead, a special defect claimant may prevail by showing the governmental entity either knew of the defect or should have known of it through the exercise of reasonable diligence. *See id.*; *City of Weston v. Gaudette*, 287 S.W.3d 832, 838 (Tex. App.—Dallas 2009, no pet.) ("A city's duty to warn of a special defect exists even if the city has only constructive knowledge.").

### 2.    *The special defect evidence in this case*

The City contends the hole in which Pargas fell was not a special defect because it was not located in the road itself. As noted above, however, a special defect need not be located directly in the roadway. *See Ybarra*, 362 S.W.3d at 133. Accordingly, we may not reverse the trial court's denial of the City's plea to the jurisdiction on that basis alone.

Pargas alleged that she fell in the hole while she was walking near FM 1435. While the City contends without elaboration that Pargas was not an "ordinary user" of FM 1435, it has not argued or presented evidence that the area where she fell was not intended for pedestrian use. *Compare Smoker*, 934 S.W.2d at 719 (uncovered hole "located where a pedestrian would normally walk on a street without a sidewalk" was special defect), *with City of Austin v. Credeur*, No. 03-19-00358-CV, 2021 WL 501110, at *3 (Tex. App.—Austin Feb. 11, 2021, no pet.) (mem. op.) (utility cover plaintiff tripped over was not special defect because it was located next to sidewalk in "an area not intended for pedestrian use"). Nor has it argued that the hole was far enough from the road's surface that a normal pedestrian user of FM 1435 would not have encountered it. *Compare City of Austin v. Furtado*, No. 03-21-00083-CV, 2021 WL 6194365, at *3 (Tex. App.—

Austin Dec. 31, 2021, pet. denied) (mem. op) ("Defects on a sidewalk may be within the class [of special defects] because a sidewalk is sufficiently related to a roadway.") (internal quotation marks omitted), *with Payne*, 838 S.W.2d at 239 (end of culvert was not special defect because it "was located far enough from the paved surface that vehicular passengers and other normal users of the roadway were unlikely to encounter it"). To the contrary, the City's plea to the jurisdiction stated that the property where Pargas fell "abuts" FM 1435. This statement essentially conceded that the premises was immediately adjacent to the road. *Cf. Staley v. City of Meadowlakes*, No. 03-99-00338-CV, 2000 WL 1028283, at *4 (Tex. App.—Austin July 27, 2000, no pet.) (mem. op.) (noting the "plain meaning [of 'abuts'] is 'to border on; reach or touch'"). Moreover, Pargas presented photographic evidence that appeared to show the hole was located only a few steps away from the surface of the road:



"[I]n almost every instance in which a court has examined an uncovered, man-made hole on a public street or a sidewalk adjacent to a street, those courts have determined that hole to be a special defect in the same class 'as excavations or obstructions.'" *City of Houston v. Kiju Joh*, 359 S.W.3d 895, 901 n.7 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (listing cases). We reach the same conclusion here. The record before the trial court showed the hole was located immediately adjacent to FM 1435 in an area where pedestrians using the road were likely to walk, especially because there is no sidewalk. *See Smoker*, 934 S.W.2d at 719 (concluding special defect existed on road without sidewalk). Based on the evidence presented below, a factfinder could rationally determine that Pargas was doing "the normal things that one might expect to do on or near a roadway" when she was injured. *See S.C.*, 2017 WL 3910992, at *4. Furthermore, the evidence showed the hole was at least three feet deep and more than a foot wide, and it appeared to have been at least partially obscured by grass and weeds. *See Breckenridge*, 2022 WL 4103202, at *6 (hole "about ten inches deep . . . and a bit larger than a standard-sized cinderblock" that "was not readily apparent or expected" was a special defect). The trial court did not err by concluding this evidence was sufficient to raise a fact question about whether the hole presented an unexpected and unusual danger that impaired an ordinary user's ability to travel on FM 1435. *See Chacon*, 148 S.W.3d at 425; *Kiju Joh*, 359 S.W.3d at 901 n.7; *Rangel*, 184 S.W.3d at 383–84; *Smoker*, 934 S.W.2d at 719; *see also Miranda*, 133 S.W.3d at 228.

Having determined the evidence raised a fact question about whether the hole was a special defect, we must also consider whether Pargas presented evidence showing the City knew or should have known of the hole's existence before her injury. *See* TEX. CIV. PRAC. & REM. CODE § 101.022(b); *Gaudette*, 287 S.W.3d at 838. Pargas alleged, and the City did not dispute, that the hole was created at least a year before her injury. *See, e.g.*, *Furtado*, 2021 WL 6194365, at *5 (plaintiff may establish constructive knowledge by showing "the alleged defect existed for so long

that the defendant had a reasonable opportunity to discover it"). Additionally, the size, depth, and location of the hole would permit a rational factfinder to conclude that a reasonable inspection would have identified it as a hazard that posed an unreasonable risk of harm to pedestrian users of FM 1435. *See Cohen*, 442 S.W.3d at 826–27. When viewed in the light most favorable to Pargas, the pleadings and evidence were sufficient to raise a genuine issue of material fact about whether the City should have known of the dangerous condition. *See Miranda*, 133 S.W.3d at 228; *Cohen*, 442 S.W.3d at 827.

We overrule the City's third issue as to Pargas's special defect claim.

### *Discretionary Acts*

In its fourth issue, the City argues that the decision of whether to fill in the hole was a discretionary act for which it retained governmental immunity. To the extent the City contends it retained immunity for the act of filling in the hole after Pargas's fall, we note that nothing in Pargas's petition sought to impose liability on the City for that act. Accordingly, she was not required to establish a waiver of immunity for that act.

To the extent the City contends it had discretion to choose not to remedy or warn of a special defect, we disagree. As explained above, when a special defect exists, a governmental entity that owns, occupies, or controls the land where the defect is located owes a legal duty to either warn of or eliminate the unreasonable risks of which the possessor is or reasonably should be aware. TEX. CIV. PRAC. & REM. CODE § 101.022(b); *Gaudette*, 287 S.W.3d at 838. The duty exists even if the governmental unit did not create or cause the special defect. *See City of El Paso v. Lopez*, 594 S.W.3d 715, 721 (Tex. App.—El Paso 2019, no pet.). The City cites no authority holding that a governmental entity has discretion to allow a special defect to persist without either remedying the defect or warning travelers of it, and we have found none. *Cf.* TEX. CIV. PRAC. & REM. CODE ANN. § 101.060(c) (governmental entity's immunity for claims arising from failure to

place a discretionary warning device "does not apply to the duty to warn of special defects such as excavations or roadway obstructions").

We overrule the City's fourth issue. *See Lopez*, 594 S.W.3d at 721–22.

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction as to Pargas's ordinary premises defect claim and render judgment dismissing that claim. We affirm the trial court's denial of the City's plea as to Pargas's special defect claim.

Beth Watkins, Justice